# U.S. District Court
# District of Minnesota (DMN)
# CIVIL DOCKET FOR CASE #: 0:07−cv−01735−PJS−RLE
# *Internal Use Only*

Winthrop Resources Corporation v. Sabert Corporation et al
Assigned to: Judge Patrick J. Schiltz
Referred to: Chief Mag. Judge Raymond L. Erickson
Cause: 28:1331 Fed. Question: Breach of Contract

Date Filed: 03/30/2007
Date Terminated: 06/20/2008
Jury Demand: Defendant
Nature of Suit: 190 Contract: Other
Jurisdiction: Federal Question

**Plaintiff**

**Winthrop Resources Corporation** represented by

**Edward T Wahl**
Faegre &Benson LLP
90 S 7th St Ste 2200
Mpls, MN 55402−3901
612−766−8720
Fax: 612−766−1600
Email: ewahl@faegre.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael M Krauss**
Faegre &Benson LLP
90 S 7th St Ste 2200
Mpls, MN 55402−3901
612−766−8514
Fax: 612−766−1600
Email: mkrauss@faegre.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathaniel J Zylstra**
Faegre &Benson LLP
90 S 7th St Ste 2200
Mpls, MN 55402−3901
612−766−8168
Fax: 612−766−1600
Email: nzylstra@faegre.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**S Renee Dotson**
Faegre &Benson LLP
90 S 7th St Ste 2200
Mpls, MN 55402−3901
612−766−7735
Fax: 612−766−1600
Email: srdotson@faegre.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Sabert Corporation** | represented by | **David−NA Crapo**<br>Not Admitted<br>*TERMINATED: 06/20/2007*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**James L Baillie**<br>Fredrikson &Byron, PA<br>200 S 6th St Ste 4000<br>Mpls, MN 55402−1425<br>612−492−7013<br>Fax: 612−492−7077<br>Email: jbaillie@fredlaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Lawrence−NA Goldman**<br>Not Admitted<br>*TERMINATED: 06/20/2007*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Matthew T Boos**<br>Fredrikson &Byron, PA<br>200 S 6th St Ste 4000<br>Mpls, MN 55402−1425<br>612−492−7180<br>Fax: 612−492−7077<br>Email: mboos@fredlaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Sabert Holding Corporation** | represented by | **David−NA Crapo**<br>(See above for address)<br>*TERMINATED: 06/20/2007*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**James L Baillie**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Lawrence−NA Goldman** |

(See above for address)
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew T Boos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sabert Corporation** represented by **David−NA Crapo**
(See above for address)
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James L Baillie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence−NA Goldman**
(See above for address)
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew T Boos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Sabert Holding Corporation** represented by **David−NA Crapo**
(See above for address)
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James L Baillie**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lawrence−NA Goldman**
(See above for address)
*TERMINATED: 06/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew T Boos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Winthrop Resources Corporation** represented by **Michael M Krauss**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**S Renee Dotson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/30/2007 | 1 | | COMPLAINT against Sabert Corporation, and Sabert Holding Corporation ( Filing fee $ 350 receipt number 4−12064.) Assigned to Judge Patrick J. Schiltz per Master List and referred to Magistrate Judge Raymond L. Erickson, filed by Winthrop Resources Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Civil Cover Sheet)(GJS) (Entered: 03/30/2007) |
| 03/30/2007 | | | Summons Issued as to Sabert Corporation, and Sabert Holding Corporation. (GJS) (Entered: 03/30/2007) |
| 04/06/2007 | 2 | | RULE 7.1 DISCLOSURE STATEMENT by Winthrop Resources Corporation of TCF National Bank as corporate parent and/or publicly held company. (Attachments: # 1 Certificate of Service)(Krauss, Michael) (Entered: 04/06/2007) |
| 04/11/2007 | 3 | | Return of Service Executed for Summons served on Sabert Corporation and Sabert Holding Corporation on 4/3/07, filed by Winthrop Resources Corporation. (Krauss, Michael) (Entered: 04/11/2007) |
| 04/19/2007 | 4 | | ANSWER to Complaint with Jury Demand, COUNTERCLAIM against Winthrop Resources Corporation by Sabert Corporation, Sabert Holding Corporation.(Boos, Matthew) (Entered: 04/19/2007) |
| 04/19/2007 | 5 | | CERTIFICATE OF SERVICE by Sabert Corporation, Sabert Holding Corporation, Sabert Corporation, Sabert Holding Corporation re 4 Answer to Complaint, Counterclaim (Boos, Matthew) (Entered: 04/19/2007) |
| 05/09/2007 | 6 | | *Answer to Counterclaim* REPLY to Counterclaim by Winthrop Resources Corporation.(Krauss, Michael) (Entered: 05/09/2007) |
| 05/09/2007 | 7 | | CERTIFICATE OF SERVICE by Winthrop Resources Corporation re 6 Reply to Counterclaim (Krauss, Michael) (Entered: 05/09/2007) |
| 05/31/2007 | 8 | | |

| | | | |
|---|---|---|---|
| | | | PRETRIAL NOTICE AND ORDER Pretrial Conference set for 6/18/2007 11:15 AM in Chambers Hearing before Chief Magistrate Judge Raymond L. Erickson. Signed by Chief Magistrate Judge Raymond L. Erickson on 5/31/07. (Attachments: # 1 Consent Form)(JMH) (Entered: 05/31/2007) |
| 06/13/2007 | 9 | | STATEMENT OF CASE as to Winthrop Resources Corporation. (Attachments: # 1 Certificate of Service)(Krauss, Michael) (Entered: 06/13/2007) |
| 06/13/2007 | 10 | | STATEMENT OF CASE as to Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Certificate of Service)(Boos, Matthew) (Entered: 06/13/2007) |
| 06/18/2007 | 11 | | Minute Entry for proceedings held before Chief Magistrate Judge Raymond L. Erickson : Initial Pretrial Conference held on 6/18/2007. Dates discussed for the progression of case. Written Pretrial Order will be issued. (jc) (Entered: 06/19/2007) |
| 06/19/2007 | 12 | | NOTICE OF WITHDRAWAL FROM CASE by Sabert Corporation, Sabert Holding Corporation (Attachments: # 1 Certificate of Service)(Boos, Matthew) (Entered: 06/19/2007) |
| 06/25/2007 | 13 | | PRETRIAL ORDER: Amended Pleadings due by 8/31/2007. Discovery due by 1/3/2008. Motions (non−disp) due 2/4/2008. Motions (disp) due by 3/4/2008. Ready for trial due by 6/7/2008. Signed by Chief Magistrate Judge Raymond L. Erickson on 6/25/07. (JMH) (Entered: 06/25/2007) |
| 10/01/2007 | 14 | | LETTER TO MAGISTRATE JUDGE by Sabert Corporation, Sabert Holding Corporation *Raymond Erickson, dated 10−1−07*. (Boos, Matthew) (Entered: 10/01/2007) |
| 10/01/2007 | 15 | | LETTER TO MAGISTRATE JUDGE by Winthrop Resources Corporation *Raymond Erickson, dated 10−1−07*. (Krauss, Michael) (Entered: 10/01/2007) |
| 10/04/2007 | 16 | | Minute Entry for proceedings held before Chief Magistrate Judge Raymond L. Erickson : motion hearing held on 10/4/2007 re: Sabert Corp's Informal Motion to Compel Discovery 14 . Motions taken under advisement as of October 4, 2007. Order to be issued. (Tape #07−58) (jc) (Entered: 10/05/2007) |
| 10/10/2007 | 17 | | MINUTE ORDER That the Defendants Informal Motion for Discovery 14 is GRANTED, in part. Signed by Chief Magistrate Judge Raymond L. Erickson on 10/10/2007. (jc) (Entered: 10/10/2007) |
| 10/19/2007 | 18 | | ORDER 1. That the Plaintiff is directed to transmit the disciplinary records of James Natale to the Defendant. 2. That the effectiveness of this Order is STAYED, as more fully detailed in the text of this Minute Order. Signed by Chief Magistrate Judge Raymond L. Erickson on 10/19/07. (SEA) (Entered: 10/19/2007) |
| 10/19/2007 | 19 | | MOTION for Summary Judgment by Winthrop Resources Corporation. (Krauss, Michael) (Entered: 10/19/2007) |
| 10/19/2007 | 20 | | NOTICE OF HEARING ON MOTION 19 MOTION for Summary Judgment : Motion Hearing set for 12/3/2007 09:00 AM in St Paul − Courtroom 4 before Judge Patrick J. Schiltz. (Krauss, Michael) (Entered: 10/19/2007) |
| 10/19/2007 | 21 | | MEMORANDUM in Support re 19 MOTION for Summary Judgment filed by Winthrop Resources Corporation. (Attachments: # 1 LR7.1 Word Count |

| | | | |
|---|---|---|---|
| | | | Compliance Certificate)(Krauss, Michael) (Entered: 10/19/2007) |
| 10/19/2007 | 22 | | EXHIBIT re 21 Memorandum in Support of Motion *for Summary Judgment* by Winthrop Resources Corporation filed by Winthrop Resources Corporation. (Attachments: # 1 Exhibit(s) 1 − Part 1# 2 Exhibit(s) 1 − Part 2# 3 Exhibit(s) 2# 4 Exhibit(s) 3# 5 Exhibit(s) 4# 6 Exhibit(s) 5# 7 Exhibit(s) 6# 8 Exhibit(s) 7# 9 Exhibit(s) 8# 10 Exhibit(s) 9# 11 Exhibit(s) 10# 12 Exhibit(s) 11# 13 Exhibit(s) 12# 14 Exhibit(s) 13# 15 Exhibit(s) 14# 16 Exhibit(s) 15# 17 Exhibit(s) 16# 18 Exhibit(s) 17# 19 Exhibit(s) 18# 20 Exhibit(s) 19# 21 Exhibit(s) 20)(Krauss, Michael) (Entered: 10/19/2007) |
| 10/19/2007 | 23 | | CERTIFICATE OF SERVICE by Winthrop Resources Corporation re 20 Notice of Hearing on Motion, 19 MOTION for Summary Judgment, 22 Exhibit,, 21 Memorandum in Support of Motion *for Summary Judgment* (Krauss, Michael) (Entered: 10/19/2007) |
| 11/13/2007 | 24 | | STIPULATION *for Filing Certain Documents under Seal* by Winthrop Resources Corporation, Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Certificate of Service)(Krauss, Michael) (Entered: 11/13/2007) |
| 11/13/2007 | 25 | | EXHIBIT *21 SEALED &SEPARATE to the Memorandum in Opposition to Motion for Summary Judgment* by Sabert Corporation, Sabert Holding Corporation filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Placeholder for Exhibit 24 SEALED &SEPERATE# 2 Placeholder for Exhibit 25 SEALED &SEPARATE# 3 Placeholder for Exhibit 27 SEALED &SEPARATE# 4 Placeholder for SEALED &SEPARATE# 5 Placeholder for Exhibit 32 − SEALED &SEPARATE# 6 Placeholder for Exhibit 33 SEALED &SEPARATE# 7 Placeholder for Exhibit 39 − SEALED &SEPARATE# 8 DOCUMENT FILED IN ERROR − ONLY − WILL RE−FILE Placeholder for Exhibit 45 − SEALED &SEPARATE)(Boos, Matthew) Modified on 11/14/2007 (jam). SEALED DOCUMENTS RECEIVED IN CLERK'S OFFICE ON 11/13/07. (KT) (Entered: 11/13/2007) |
| 11/13/2007 | 26 | | ORDER 1. That the Stipulation 24 is APPROVED, and is adopted as the Order of this Court, and the parties are directed to comply fully with its terms. 2. That the Clerk of Court is directed to maintain the confidentiality of the documents identified in the foregoing stipulation. 3. That, in connection with the defendants' opposition to plaintiff's motion for summary judgment, the documents identified in the foregoing stipulation shall be filed in sealed envelopes displaying the caption of the action, a general description of the contents of the envelope, and the following statement: CONFIDENTIAL MATERIAL FILED UNDER SEAL This envelope contains materials designated as Confidential pursuant to Court Order entered on ____________. This envelope is NOT to be opened nor the contents thereof to be revealed, except by Court order; provided, however, that any Judge presiding over this case and the Judge's staff may review the contents of this envelope, and counsel of record in this case may open and inspect the contents of this envelope in the office of theClerk of Courts, without order of the Court. Signed by Chief Magistrate Judge Raymond L. Erickson on 11/13/2007. (jc) (Entered: 11/13/2007) |
| 11/13/2007 | 27 | | EXHIBIT *Exhibits 2−20 to Memorandum in Opposition to Motion for Summary Judgment* by Sabert Corporation, Sabert Holding Corporation filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Exhibit(s) Exhibit 2 |

| | | | |
|---|---|---|---|
| | | | to Memo in Opposition# 2 Exhibit(s) Exhibit 3 to Memo in Opposition# 3 Exhibit(s) Exhibit 4 to Memo in Opposition# 4 Exhibit(s) Exhibit 5 to Memo in Opposition# 5 Exhibit(s) Exhibit 6 to Memo in Opposition# 6 Exhibit(s) Exhibit 7 to Memo in Opposition# 7 Exhibit(s) Exhibit 8 to Memo in Opposition# 8 Exhibit(s) Exhibit 9 to Memo in Opposition# 9 Exhibit(s) Exhibit 10 to Memo in Opposition# 10 Exhibit(s) Exhibit 11 to Memo in Opposition# 11 Exhibit(s) Exhibit 12 to Memo in Opposition# 12 Exhibit(s) Exhibit 13 to Memo in Opposition# 13 Exhibit(s) Exhibit 14 to Memo in Opposition# 14 Exhibit(s) Exhibit 15 to Memo in Opposition# 15 Exhibit(s) Exhibit 16 to Memo in Opposition# 16 Exhibit(s) Exhibit 17 to Memo in Opposition# 17 Exhibit(s) Exhibit 18 to Memo in Opposition# 18 Exhibit(s) Exhibit 19 to Memo in Opposition# 19 Exhibit(s) Exhibit 20 to Memo in Opposition)(Boos, Matthew) (Entered: 11/13/2007) |
| 11/13/2007 | 28 | | EXHIBIT *Exhibits 22−62 to Memorandum in Opposition to Motion for Summary Judgment* by Sabert Corporation, Sabert Holding Corporation filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Exhibit(s) Exhibit 23# 2 Exhibit(s) Exhibit 26# 3 Exhibit(s) Exhibit 29# 4 Exhibit(s) Exhibit 30# 5 Exhibit(s) Exhibit 31# 6 Exhibit(s) Exhibit 34# 7 Exhibit(s) Exhibit 35# 8 Exhibit(s) Exhibit 36# 9 Exhibit(s) Exhibit 37# 10 Exhibit(s) Exhibit 38# 11 Exhibit(s) Exhibit 40# 12 Exhibit(s) Exhibit 41# 13 Exhibit(s) Exhibit 42# 14 Exhibit(s) Exhibit 43# 15 Exhibit(s) Exhibit 44# 16 Exhibit(s) Exhibit 46# 17 Exhibit(s) Exhibit 47# 18 Exhibit(s) Exhibit 48# 19 Exhibit(s) Exhibit 49# 20 Exhibit(s) Exhibit 50# 21 Exhibit(s) Exhibit 51# 22 Exhibit(s) Exhibit 52# 23 Exhibit(s) Exhibit 53# 24 Exhibit(s) Exhibit 54# 25 Exhibit(s) Exhibit 55# 26 Exhibit(s) Exhibit 56# 27 Exhibit(s) Exhibit 57# 28 Exhibit(s) Exhibit 58# 29 Exhibit(s) Exhibit 59# 30 Exhibit(s) Exhibit 60# 31 Exhibit(s) Exhibit 61# 32 Exhibit(s) Exhibit 62)(Boos, Matthew) (Entered: 11/13/2007) |
| 11/13/2007 | 29 | | EXHIBIT *1 to Memorandum in Opposition to Motion for Summary Judgment* by Sabert Corporation, Sabert Holding Corporation filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Exhibit(s) Exhibit 1−B# 2 Exhibit(s) Exhibit 1−C# 3 Exhibit(s) Exhibit 1−D# 4 Exhibit(s) Exhibit 1−E# 5 Exhibit(s) Exhibit 1−F# 6 Exhibit(s) Exhibit 1−G)(Boos, Matthew) (Entered: 11/13/2007) |
| 11/13/2007 | 30 | | AFFIDAVIT of Matthew T. Boos in OPPOSITION TO 19 MOTION for Summary Judgment filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) (Entered: 11/13/2007) |
| 11/13/2007 | 31 | | AFFIDAVIT of Gary Ziznewski in OPPOSITION TO 19 MOTION for Summary Judgment filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) (Entered: 11/13/2007) |
| 11/13/2007 | 32 | | DOCUMENT FILED IN ERROR − WILL RE−FILE MEMORANDUM in Opposition re 19 MOTION for Summary Judgment filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) Modified on 11/16/2007 (jam). (Entered: 11/13/2007) |
| 11/14/2007 | 33 | | LETTER TO DISTRICT JUDGE by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) (Entered: 11/14/2007) |
| 11/14/2007 | 34 | | EXHIBIT re 28 Exhibit,,,, *Exhibit 45 to the Memorandum in Opposition to Summary Judgment Motion* by Sabert Corporation, Sabert Holding Corporation |

| | | | |
|---|---|---|---|
| | | | filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) (Entered: 11/14/2007) |
| 11/14/2007 | 35 | | CERTIFICATE OF SERVICE by Sabert Corporation, Sabert Holding Corporation re 28 Exhibit,,,, 34 Exhibit, 27 Exhibit,,,, 29 Exhibit, 31 Affidavit in Opposition to Motion, 32 Memorandum in Opposition to Motion, 30 Affidavit in Opposition to Motion, 25 Exhibit,, (Boos, Matthew) (Entered: 11/14/2007) |
| 11/16/2007 | 36 | | MEMORANDUM in Opposition re 19 MOTION for Summary Judgment *(replaces Docket #32)* filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 LR7.1 Word Count Compliance Certificate # 2 Certificate of Service)(Boos, Matthew) (Entered: 11/16/2007) |
| 11/21/2007 | 37 | | REPLY MEMORANDUM in Further Support re 19 MOTION for Summary Judgment filed by Winthrop Resources Corporation. (Attachments: # 1 LR7.1 Word Count Compliance Certificate)(Krauss, Michael) Modified text on 11/26/2007 (kt). (Entered: 11/21/2007) |
| 11/21/2007 | 38 | | EXHIBIT re 37 Memorandum, *in Further Support of Motion for Summary Judgment* by Winthrop Resources Corporation. (Attachments: # 1 Exhibit(s) PX 21# 2 PX 22# 3 PX 23# 4 PX 24# 5 PX 25# 6 PX 26)(Krauss, Michael) (Entered: 11/21/2007) |
| 11/21/2007 | 39 | | CERTIFICATE OF SERVICE by Winthrop Resources Corporation re 37 Memorandum, 38 Exhibit *in Further Support of its Motion for Summary Judgment* (Krauss, Michael) (Entered: 11/21/2007) |
| 11/29/2007 | 40 | | LETTER TO DISTRICT JUDGE by Sabert Corporation, Sabert Holding Corporation requesting permission to file additional exhibit. (Boos, Matthew) Modified text on 11/30/2007 (kt). (Entered: 11/29/2007) |
| 11/30/2007 | 41 | | EXHIBIT 63 re 36 Memorandum in Opposition to Motion filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Certificate of Service)(Boos, Matthew) Modified text on 12/3/2007 (kt). (Entered: 11/30/2007) |
| 12/03/2007 | 42 | | Minute Entry for proceedings held before Judge Patrick J. Schiltz : Motion Hearing held on 12/3/2007 re 19 MOTION for Summary Judgment filed by Winthrop Resources Corporation. Matter taken under advisement. Written order forthcoming. (Court Reporter Debra Beauvais) (sf) (Entered: 12/03/2007) |
| 12/19/2007 | 43 | | STIPULATION *OF CONFIDENTIALITY* by Winthrop Resources Corporation, Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Affidavit of Service)(Krauss, Michael) (Entered: 12/19/2007) |
| 12/19/2007 | 44 | | PROTECTIVE ORDER 1. That the Stipulation of Confidentiality 43 is APPROVED, and the parties are directed to comply fully with its terms. 2. That the Clerk of Court is directed to maintain the confidentiality of the documents filed in accordance with the Stipulation of Confidentiality. Signed by Chief Magistrate Judge Raymond L. Erickson on 12/19/2007. (jz) (Entered: 12/19/2007) |
| 12/26/2007 | 45 | | MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Exhibit(s) Proposed Amended Answer and Counterclaim)(Boos, Matthew) (Entered: 12/26/2007) |

| | | | |
|---|---|---|---|
| 12/26/2007 | 46 | | NOTICE OF HEARING ON MOTION 45 MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* : Motion Hearing set for 1/8/2008 11:00 AM in Minneapolis − Courtroom 9E before Chief Mag. Judge Raymond L. Erickson. (Boos, Matthew) (Entered: 12/26/2007) |
| 12/26/2007 | 47 | | MEMORANDUM IN SUPPORT OF 45 MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) Modified text on 12/27/2007 (kt). (Entered: 12/26/2007) |
| 12/26/2007 | 48 | | LR7.1 WORD COUNT COMPLIANCE CERTIFICATE re 47 Memorandum in Support filed by Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) Modified text on 12/27/2007 (kt). (Entered: 12/26/2007) |
| 12/26/2007 | 49 | | AFFIDAVIT of Matthew T. Boos in SUPPORT OF 45 MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* filed by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Exhibit(s) Exhibit 1# 2 Exhibit(s) Exhibit 2# 3 Exhibit(s) Exhibit 3# 4 Exhibit(s) Exhibit 4# 5 Exhibit(s) Exhibit 5# 6 Exhibit(s) Exhibit 6# 7 Exhibit(s) Exhibit 7# 8 Exhibit(s) Exhibit 8# 9 Exhibit(s) Exhibit 9# 10 Exhibit(s) Exhibit 10# 11 Exhibit(s) Exhibit 11# 12 Exhibit(s) Exhibit 12# 13 Exhibit(s) Exhibit 13# 14 Exhibit(s) Exhibit 14# 15 Exhibit(s) Exhibit 15# 16 Exhibit(s) Exhibit 16# 17 Exhibit(s) Exhibit 17# 18 Exhibit(s) Exhibit 18# 19 Exhibit(s) Exhibit 19# 20 Exhibit(s) Exhibit 20# 21 Exhibit(s) Exhibit 21# 22 Exhibit(s) Exhibit 22# 23 Exhibit(s) Exhibit 23# 24 Exhibit(s) Exhibit 24# 25 Exhibit(s) Exhibit 25# 26 Exhibit(s) Exhibit 26# 27 Exhibit(s) Exhibit 27# 28 Exhibit(s) Exhibit 28# 29 Exhibit(s) Exhibit 29# 30 Exhibit(s) Exhibit 30# 31 Exhibit(s) Exhibit 31# 32 Exhibit(s) Exhibit 32# 33 Exhibit(s) Exhibit 33# 34 Exhibit(s) Exhibit 34# 35 Exhibit(s) Exhibit 35# 36 Exhibit(s) Exhibit 36# 37 Exhibit(s) Exhibit 37# 38 Exhibit(s) Exhibit 38# 39 Exhibit(s) Exhibit 39# 40 Exhibit(s) Exhibit 40# 41 Exhibit(s) Exhibit 41# 42 Exhibit(s) Exhibit 42# 43 Exhibit(s) Exhibit 43)(Boos, Matthew) (Entered: 12/26/2007) |
| 12/26/2007 | 50 | | CERTIFICATE OF SERVICE by Sabert Corporation, Sabert Holding Corporation re 47 Brief, 49 Affidavit in Support of Motion, 46 Notice of Hearing on Motion, 45 MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same*, 48 LR7.1 Word Count Compliance Certificate (Boos, Matthew) (Entered: 12/26/2007) |
| 12/28/2007 | 51 | | STIPULATION For Limited Modification of the 13 PRETRIAL ORDER to Allow Brenda Bradley and Richard Pieper to be Deposed on January 7, 2008 by Winthrop Resources Corporation, Sabert Corporation, Sabert Holding Corporation. (Boos, Matthew) Modified text on 1/2/2008 (kt). (Entered: 12/28/2007) |
| 01/02/2008 | 52 | | ORDER That the Stipulation 51 is APPROVED, and the Defendants may take the depositions of Brenda Bradley and Richard Pieper on Monday, January 7, 2008. Signed by Chief Magistrate Judge Raymond L. Erickson on 01/02/2008. (jz) (Entered: 01/02/2008) |
| 01/02/2008 | 53 | | MEMORANDUM in Opposition re 45 MOTION to Amend/Correct *Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* filed by Winthrop Resources Corporation. (Attachments: # 1 LR7.1 Word Count Compliance Certificate)(Krauss, Michael) (Entered: 01/02/2008) |

| | | | |
|---|---|---|---|
| 01/02/2008 | 54 | | EXHIBIT re 53 Memorandum in Opposition to Motion, *to File an Amended Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* by Winthrop Resources Corporation filed by Winthrop Resources Corporation. (Attachments: # 1 Exhibit(s) PX 1# 2 Exhibit(s) PX 2# 3 Exhibit(s) PX 3# 4 Exhibit(s) PX 4# 5 Exhibit(s) PX 5# 6 Exhibit(s) PX 6# 7 Exhibit(s) PX 7# 8 Exhibit(s) PX 8# 9 Exhibit(s) PX 9# 10 Exhibit(s) PX 10# 11 Exhibit(s) PX 11# 12 Exhibit(s) PX 12# 13 Exhibit(s) PX 13# 14 Exhibit(s) PX 14# 15 Exhibit(s) PX 15# 16 Exhibit(s) PX 16# 17 Exhibit(s) PX 17# 18 Exhibit(s) PX 18# 19 Exhibit(s) PX 19# 20 Exhibit(s) PX 20# 21 Exhibit(s) PX 21)(Krauss, Michael) (Entered: 01/02/2008) |
| 01/02/2008 | 55 | | CERTIFICATE OF SERVICE by Winthrop Resources Corporation re 54 Exhibit,, 53 Memorandum in Opposition to Motion, *to File an Amended Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same* (Krauss, Michael) (Entered: 01/02/2008) |
| 01/03/2008 | 56 | | EXHIBIT PX 6 (REFILED) re 53 Memorandum in Opposition to Motion filed by Winthrop Resources Corporation. (Krauss, Michael) Modified text on 1/4/2008 (kt). (Entered: 01/03/2008) |
| 01/03/2008 | 57 | | AMENDED EXHIBIT INDEX re 53 Memorandum in Opposition to Motion filed by Winthrop Resources Corporation. (Attachments: # 1 Exhibit(s) PX 22)(Krauss, Michael) Modified text on 1/4/2008 (kt). (Entered: 01/03/2008) |
| 01/03/2008 | 58 | | CERTIFICATE OF SERVICE by Winthrop Resources Corporation re 57 Exhibit, *(Amended Exhibit Index to Plaintiff's Memorandum in Opposition to Defendants' Motion to File an Amended Answer and Counterclaim and to Amend the Pretrial Order to Permit the Same and attaching PX 22)* (Krauss, Michael) (Entered: 01/03/2008) |
| 01/04/2008 | 59 | | Minute Entry for proceedings held before Chief Magistrate Judge Raymond L. Erickson : Informal discovery dispute− re:scheduled depositions held on 1/4/2008. Dispute placed on Record. Written Order will be issued. (Tape #07−78/08/01) (jz) (Entered: 01/04/2008) |
| 01/04/2008 | 60 | | MINUTE ORDER That the Defendants'informal Motion for a Protective Order is GRANTED, as more fully detailed in the text of this Minute Order. Signed by Chief Magistrate Judge Raymond L. Erickson on 01/04/2008. (jz) (Entered: 01/04/2008) |
| 01/04/2008 | 61 | | LETTER TO DISTRICT JUDGE by Winthrop Resources Corporation *regarding question at summary judgment hearing*. (Attachments: # 1 Certificate of Service)(Krauss, Michael) (Entered: 01/04/2008) |
| 01/08/2008 | 62 | | Minute Entry for proceedings held before Chief Magistrate Judge Raymond L. Erickson : Motion Hearing held on 1/8/2008 re: Hearing on Defendants' Motion to Amend Pretrial Order and to Amend Answer 45 . Motions taken under advisement as of: January 8, 2008. (Tape #08−03) (jz) (Entered: 01/08/2008) |
| 01/08/2008 | 63 | | TRANSCRIPT of Plaintiff's Motion for Summary Judgment held on December 3, 2007 before Judge Patrick J. Schiltz. Court Reporter: Debra Beauvais. (56pgs) FILED CONVENTIONALLY (dch) (Entered: 01/08/2008) |
| 01/11/2008 | 64 | | ORDER That the Motion of the Defendants to Amend the Pretrial Order to Permit an Amendment of their Answer and Counterclaims Docket No. 45 is |

| | | | |
|---|---|---|---|
| | | | DENIED, and the Motion of the Defendants to Amend their Answer and Counterclaims Docket No. 45 is DENIED, as moot. Signed by Chief Magistrate Judge Raymond L. Erickson on 1/11/08. (JMH) (Entered: 01/11/2008) |
| 06/20/2008 | 65 | 12 | ORDER granting 19 Motion for Summary Judgment. Plaintiff shall recover $468,127.47 from defendants. Plaintiff is entitled to the return of the equipment leased to defendants pursuant to Lease Agreement No. SA041003.Plaintiff is entitled to recover its attorney's fees, costs, and expenses incurred as a result of defendants' breach of Lease Agreement No. SA041003. Within ten days of the date of this order, plaintiff shall file and serve a detailed affidavit and supporting documentation for its attorney's fees, costs, and expenses. Defendants may file and serve a response of no more than 4000 words within ten days after the date plaintiff files and serves its affidavit. LET JUDGMENT BE ENTERED ACCORDINGLY.(Written Opinion). Signed by Judge Patrick J. Schiltz on 06/20/08. (bjs) (Entered: 06/20/2008) |
| 06/23/2008 | 66 | 34 | JUDGMENT in favor of Winthrop Resources Corporation against Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 Civil−8th Circuit Pre−Hearing Conference Notice, # 2 Civil Notice − appeal)(VEM) (Entered: 06/23/2008) |
| 06/30/2008 | 67 | | AFFIDAVIT *of Michael M. Krauss in Support of Plaintiff's Award of Attorneys' Fees, Costs and Expenses* by Winthrop Resources Corporation. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Certificate of Service)(Krauss, Michael) (Entered: 06/30/2008) |
| 07/18/2008 | 68 | 37 | NOTICE OF APPEAL TO 8TH CIRCUIT as to 65 Order on Motion for Summary Judgment,,, by Sabert Corporation, Sabert Holding Corporation. (Attachments: # 1 COA − Form A, # 2 COA − Form B, # 3 Certificate of Service)(Boos, Matthew) (Entered: 07/18/2008) |
| 07/21/2008 | 69 | 41 | ORDER − Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff shall recover its attorney's fees, costs, and expenses in the amount of $116,861.58 from defendants. Signed by Judge Patrick J. Schiltz on 07/21/08. (bjs) (Entered: 07/21/2008) |
| 07/21/2008 | 70 | 43 | TRANSMITTAL OF APPEAL LETTER TO U. S. COURT OF APPEALS, 8TH CIRCUIT, Re: Notice of Appeal to 8th Circuit 68 . (VEM) (Entered: 07/21/2008) |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WINTHROP RESOURCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SABERT CORPORATION and SABERT HOLDING CORPORATION,<br><br>Defendants. | Case No. 07-CV-1735 (PJS/RLE)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Edward T. Wahl, Michael M. Krauss, and Nathaniel J. Zylstra, FAEGRE & BENSON, L.L.P., for plaintiff.

James L. Baillie and Matthew T. Boos, FREDRIKSON & BYRON, P.A., for defendants.

Plaintiff Winthrop Resources Corporation ("Winthrop") brings a claim for breach of a lease agreement against defendants Sabert Corporation and Sabert Holding Corporation (collectively "Sabert"). Sabert brings counterclaims for unjust enrichment and breach of contract. This matter is before the Court on Winthrop's motion for summary judgment on both its claim against Sabert and Sabert's counterclaims against it. For the reasons set forth below, the Court grants Winthrop's motion and enters judgment for Winthrop in the amount of $468,127.47.

## I. BACKGROUND

### *A. The Lease*

Winthrop is a financial-services company that leases computer and other equipment to corporate customers. In March 2003, Winthrop approached Sabert, a food-packaging manufacturer, about entering into a financing agreement for computer equipment that Sabert had recently purchased from third-party vendors. Pursuant to the parties' agreement, Winthrop

purchased the equipment and then leased it back to Sabert. *See* Defs.' Exs. 7, 9, 11 (June 2003 purchase agreements).

In May 2003, the parties executed a six-page lease agreement, titled Lease Agreement No. SA041003 ("the Lease"). The parties simultaneously executed a lease schedule listing the equipment that was subject to the Lease ("Schedule 001"). *See* Compl. Ex. A (hereinafter "Lease"); Pl.'s Ex. 5 (hereinafter "Sched. 001"). The Lease and Schedule 001 expressly incorporated each other. Six months later, in November 2003, the parties executed a new lease schedule ("Schedule 001R") that expressly replaced Schedule 001. *See* Compl. Ex. B (hereinafter "Sched. 001R"). Schedule 001R, which also expressly incorporated the Lease, included all the equipment listed in Schedule 001 as well as some additional equipment.

The parties' dispute centers on when the lease term began and when the lease term ended. Fortunately the contract clearly addresses both of these issues. The first numbered section of the Lease provides as follows:

> The term of this Lease Agreement, as to all Equipment designated on any particular Lease Schedule, shall commence on the Installation Date for all Equipment on such Lease Schedule and shall continue for an initial period ending that number of months from the Commencement Date as set forth in such Lease Schedule (the "Initial Term") and shall continue from year to year thereafter until terminated.

Lease § 1. Both schedules, in turn, state that the "Term of Lease from Commencement Date" is forty-two months. Sched. 001 at 1; Sched. 001R at 1.

Together, these clauses do several things. First, they establish that the lease term begins on the Installation Date, which is defined in the second numbered section of the Lease as follows:

> The Installation Date for each item of Equipment shall be the day said item of Equipment is installed at the Location of Installation, ready for use, and accepted in writing by the Lessee.

Lease § 2. In other words, the lease term begins as to each item of equipment when that item of equipment is installed.

Next, the clauses establish that the Initial Term of the Lease concludes forty-two months after a *different* date — the Commencement Date. The Commencement Date is defined in the second numbered section of the Lease as follows:

> The Commencement Date for any Lease Schedule is the first of the month following installation of *all* the Equipment on the Lease Schedule . . . . The Lessee agrees to complete, execute and deliver a Certificate of Acceptance to Lessor upon installation of the Equipment.

Lease § 2 (emphasis added). As this language makes clear, the Commencement Date as to the equipment listed on a particular lease schedule is the date on which the last item of equipment listed on that schedule is installed. Put differently, the Commencement Date does not occur until *all* of the equipment on a particular lease schedule is "installed at the Location of Installation, ready for use, and accepted in writing by [Sabert]." Lease § 2.

Suppose, for example, that a computer monitor was installed (and ready for use and accepted in writing) on July 1, 2003. Sabert was obligated to *begin* making payments to Winthrop for the use of that monitor on July 1, 2003. To calculate the date on which Sabert's obligations with respect to the monitor *concluded*, one would have to first identify the lease schedule on which the monitor was listed, then identify the date on which the last piece of equipment on that lease schedule was installed (that is, the Commencement Date), and finally count forty-two months forward from the first of the month following that date.

Obviously, then, the Lease contemplates that there may be an interim period between the Installation Date of a particular item of equipment, which is the beginning of the lease term as to that item of equipment, and the Commencement Date applicable to that item of equipment (and to all of the other equipment listed on the same lease schedule), which triggers the start of the forty-two month Initial Term of the Lease. The Lease expressly describes Sabert's payment obligations during that interim period:

> The Lease Charge for the period from the Installation Date to the Commencement Date shall be an amount equal to the 'Monthly Lease Charge' divided by thirty (30) and multiplied by the number of days from and including the Installation Date to the Commencement Date . . . .

Lease § 3. The schedules further provide that the monthly lease charge is "prorated and charged as interim rent between the date an item of equipment is accepted and the Commencement Date." Sched. 001; Sched. 001R.

Finally, it is critical to note that the Lease includes an "evergreen" clause stating that the Lease "shall continue from year to year thereafter until terminated." Lease § 1. Thus, although the Lease defines an Initial Term that ends forty-two months after the Commencement Date, the Initial Term is an *initial* term. The Lease does not automatically end upon the expiration of the Initial Term. Rather, the Lease automatically renews in one-year increments until it is terminated. Either party can terminate the Lease without cause at the end of the Initial Term, or at the end of any subsequent one-year term, by mailing a written notice of termination to the other party at least 120 days before the termination date. Lease § 1.

*B. Sabert's Acceptance of Equipment on Schedule 001*

In June 2003, shortly after signing the Lease and Schedule 001, Sabert signed three acceptance forms for a total of $992,274.24 of equipment. Ziznewski Aff. ¶¶ 12, 14; Defs.' Exs. 7-12. Sabert contends that, because it accepted all of the equipment listed in Schedule 001 in June 2003, the Commencement Date for Schedule 001 was July 1, 2003.

Winthrop disagrees. Winthrop points to a provision in Schedule 001 requiring Sabert to lease a minimum amount of hardware: "Total cost of equipment on this lease schedule shall include a minimum of $155,000.00 of hardware." Sched. 001. According to Winthrop, Sabert accepted only $153,500.69 worth of hardware in June 2003 and did not reach the $155,000 threshold until the following November. Thus, argues Winthrop, the Commencement Date of Schedule 001 was December 1, 2003.

The list of equipment in Schedule 001 is not detailed; instead, it is simply a list of four general categories of items under the heading "Equipment Description (including features)." Sched. 001 at 2. These four categories are "Application Software," "Maintenance and Installation Services," "Servers, Computers, and Peripherals," and "RF Equipment and Network Equipment." Sched. 001 at 2. In contrast, the certificates of acceptance that Sabert signed pursuant to Schedule 001 contain numerous pages of specifically described items of hardware, software, and services, including, where appropriate, make and model numbers. Defs.' Exs. 8, 10, 12. Because Schedule 001 only provides a very general description of various categories of equipment, it is not possible to cross-check the equipment listed in the certificates of acceptance against the equipment listed in Schedule 001 to determine if Sabert in fact accepted all of the equipment in Schedule 001. Save for the dispute about the $155,000 in hardware, however, the

parties do not appear to dispute that by June 2003 Sabert had accepted all of the equipment contemplated in Schedule 001.

*C. Schedule 001R*

As noted, in November 2003 the parties executed Schedule 001R, which added some equipment to the Lease and adjusted the monthly lease charge accordingly. At the top of Schedule 001R, directly underneath the title, the document states: "This Lease Schedule No. 001R replaces Lease Schedule No. 001[.]" Sched. 001R.

Aside from the monthly lease charge, Schedule 001R is very similar to Schedule 001. Like Schedule 001, Schedule 001R incorporates the Lease and states that the "Term of Lease from Commencement Date" is "42 months." Like Schedule 001, Schedule 001R includes a list of equipment, all of which must be "installed" within the meaning of the Lease to trigger the Commencement Date of Schedule 001R. And like Schedule 001, Schedule 001R states that "[t]he Monthly Lease Charge will be prorated and charged as interim rent between the date an item of equipment is accepted and the Commencement Date."

The list of equipment in Schedule 001R, however, is much more detailed and specific than the list in Schedule 001. Schedule 001R includes every piece of equipment listed in the certificates of acceptance that Sabert signed back in June 2003 (with the exception of a couple of entries for professional fees and expenses that appear on the June 2003 acceptance certificates but not on Schedule 001R). *Compare* Sched. 001R at 2-6, 9 *with* Defs.' Exs. 8, 10, 12. Along with the equipment that Sabert had already accepted in June, Schedule 001R includes about two and a half pages of additional equipment. *See* Sched. 001R at 6-8, 10. On the same day that Sabert signed Schedule 001R (November 10, 2003), Sabert also signed a certificate of

acceptance for the new equipment listed in Schedule 001R. Pl.'s Ex. 15. Thus, as of November 10, 2003, all of the equipment listed in Schedule 001R had been "installed at the Location of Installation, ready for use, and accepted in writing by" Sabert. Lease § 2.

*D. The Parties' Dispute*

Toward the end of 2006, Sabert received an invoice from Winthrop for January 2007. Believing that the term of the Lease would end on December 31, 2006, Sabert contacted Winthrop to ask about the invoice. Ziznewski Aff. ¶ 24. Winthrop informed Sabert that the forty-two-month term did not begin until December 1, 2003, which was the first of the month following Sabert's acceptance of all of the equipment on Schedule 001R. Ziznewski Aff. ¶ 24; Defs.' Ex. 44. Thus, Winthrop told Sabert, the Initial Term would not end until May 31, 2007. Ziznewski Aff. ¶ 24.

On January 8, 2007, Sabert sent a letter to Winthrop through its then-counsel, Lawrence Goldman. Defs.' Ex. 41. The Goldman letter expressed Sabert's view that, although the parties' transaction was structured as a lease, it was in substance a loan from Winthrop to Sabert that was to be repaid over a lease term of forty-two months. The letter further asserted that Sabert's obligations under the Lease terminated with Sabert's December 2006 payment. The letter also asserted that the Commencement Date of the forty-two-month period was July 1, 2003 and that, "[a]t most, Sabert may owe remaining rent payments on the November 2003 advance." Defs.' Ex. 41 at 2. Sabert concluded the letter by stating that it would not make any more payments.

In response to Sabert's letter, Winthrop sent a letter pointing out that Schedule 001R replaced Schedule 001 and that the Commencement Date of Schedule 001R was December 1, 2003. Pl.'s Ex. 20. Winthrop also expressly stated that it did not consider Sabert's letter a

notice of intent to terminate Schedule 001R: "Lease Schedule Number 001R remains in effect as Winthrop has not received notice of Sabert's intention to terminate it." Pl.'s Ex. 20.[1]

After Sabert refused to make any more lease payments, Winthrop filed this action in March 2007 for breach of the Lease. Sabert counterclaimed for unjust enrichment and breach of contract. In August 2007, some four months after filing its answer and counterclaim, Sabert sent a written termination notice to Winthrop pursuant to § 1 of the Lease. Defs.' Ex. 43.

## I. ANALYSIS

### *A. Standard of Review*

Winthrop moves for judgment on Sabert's counterclaims as well as for judgment in its favor on its own claim. The Lease provides, and the parties agree, that Minnesota law applies to their claims. Lease § 25.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute

---

[1]Apparently without noticing the discrepancy, each side has submitted a different version of Winthrop's letter to the Court. *Compare* Pl.'s Ex. 20 *with* Defs.' Ex. 42. In particular, Winthrop's version of the letter contains the language quoted in the text, but that language does not appear in Sabert's version. The Court nevertheless accepts Winthrop's version as the true version. It is obvious, from the Bates stamps on the two letters, that Winthrop originally produced both versions to Sabert during discovery. But whereas Winthrop's version is signed and printed on Winthrop letterhead with January 2007 fax information printed across the top, Sabert's version is unsigned, is not printed on Winthrop letterhead, and bears no indicia of having been faxed. Most importantly, during oral argument, the Court pointed out to Sabert that Winthrop's letter expressly notified Sabert that Winthrop had not received notice of Sabert's intent to terminate. *See* Hr'g Tr. 37, Dec. 3, 2007 [Docket No. 63]. Sabert did not dispute the content of the letter as described by the Court. *Id.* It is thus apparent that there is no real dispute that Sabert received Winthrop's version of the letter and that Sabert's version is an earlier draft of the letter that Sabert obtained during discovery and inadvertently submitted to the Court.

over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### *B. Winthrop's Claim*

#### 1. The Commencement Date

Winthrop argues that, under the plain meaning of the Lease and the associated schedules, the Commencement Date for both Schedule 001 and Schedule 001R was December 1, 2003. The Court agrees that, under the unambiguous terms of the Lease and Schedule 001R, the Commencement Date for Schedule 001R was December 1, 2003. The Court further finds that, because nothing turns on the question of the Commencement Date for Schedule 001, the Court need not address it.

The primary goal of contract interpretation is to ascertain the intent of the parties. *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When the parties' agreement has been reduced to an unambiguous, integrated writing, their intent must be determined from the language of the written contract alone. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312-13 (Minn. 2003); *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 123 (Minn. 1991). A contract is

ambiguous only if its language is reasonably susceptible to more than one interpretation. *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). The interpretation of an unambiguous written contract is a question of law for the Court. *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004).

The Court holds that the Lease and Schedule 001R unambiguously provide that the Commencement Date for Schedule 001R was December 1, 2003.[2] On the very first page of the Lease, the Lease defines the Commencement Date as "the first of the month following installation of *all* the Equipment on the Lease Schedule . . . ." Lease § 2 (emphasis added). A piece of equipment is not considered "installed" until Sabert signs a certificate of acceptance for it. Lease § 2. As noted, Schedule 001R, which the parties executed in November 2003, contains a comprehensive list of equipment. Sabert had already accepted *some* of the equipment on Schedule 001R via certificates of acceptance that Sabert executed the previous June. But Schedule 001R also listed additional equipment that Sabert did not accept until November 10, 2003, and that equipment was therefore not "installed" until November 10. Thus, the Commencement Date — that is, "the first of the month following installation of *all* the

[2] The Court further holds that the contract is integrated. Section 25 of the Lease includes the following integration clause:

> There are no unwritten or oral agreements between the parties. This Lease Agreement and associated Lease Schedule(s) constitute the entire understanding and agreement between [Winthrop] and [Sabert] with respect to the lease of the Equipment superseding all prior agreements, understandings, negotiations, discussions, proposals, representations, promises, commitments and offers between the parties, whether oral or written.

Equipment" on Schedule 001R — was December 1, 2003. The terms of the Lease and Schedule 001R could not be clearer.

Sabert contends that the Lease is ambiguous with respect to which schedule — Schedule 001 or Schedule 001R — governs the Commencement Date for the equipment that is listed on both schedules. But Sabert's argument ignores the obvious point that Schedule 001R expressly superseded Schedule 001. As noted, directly underneath the title of Schedule 001R, that document states: "This Lease Schedule No. 001R replaces Lease Schedule No. 001[.]" As further noted, Schedule 001R includes all of the equipment that was previously listed on Schedule 001 (as well as some additional equipment). Thus, at the moment that the parties executed Schedule 001R, it was that schedule, and not Schedule 001, that defined their rights and obligations — including their rights and obligations with respect to equipment listed on both Schedule 001 and Schedule 001R.[3]

---

[3]Because Schedule 001R replaced Schedule 001, the Commencement Date of Schedule 001 is irrelevant. That said, the Court notes that, if the Commencement Date of Schedule 001 was relevant, the Court would find that the Lease and Schedule 001 were ambiguous in addressing that issue. As described above, Winthrop argues that the Commencement Date of Schedule 001 was December 1, 2003, because Schedule 001 required Sabert to lease a minimum of $155,000 worth of hardware, and Sabert did not meet that requirement until November 2003. But Schedule 001 does not require Sabert to lease a minimum of $155,000 *worth* of hardware; instead, it states that "[t]otal *cost of equipment* on this lease schedule shall include a minimum of $155,000 of hardware." Sched. 001 (emphasis added). Sabert offers evidence that the total cost of the hardware that it accepted in June 2003 was $159,549.23. Defs.' Ex. 47. Winthrop argues that the $159,549.23 figure includes "soft costs" such as shipping and tax, and that excluding those costs puts the cost of the hardware below $155,000. But Sabert notes that, under generally accepted accounting principles, shipping and tax are considered part of the "cost" of property. At a minimum, therefore, Schedule 001 is ambiguous with respect to whether shipping and tax would be considered part of the "cost of equipment." Thus, if the question of the Commencement Date of Schedule 001 were relevant, the issue would have to be decided by a jury.

Sabert points to a host of extrinsic evidence to argue that the parties intended the actual substance of their transaction to be a loan with a 3.7% interest rate that was to be repaid in forty-two monthly installments. The purpose of Schedule 001R, Sabert argues, was to adjust the monthly "lease" payment (really a loan payment, in Sabert's view) to account for a small amount of additional principal ($13,561) that Sabert borrowed in November 2003. It would be irrational, Sabert argues, for it to agree to make a number of additional "lease" payments of over $25,000 per month in return for a loan of an additional $13,561. Thus, Sabert contends, the parties could not have intended for Schedule 001R to restart the forty-two-month Initial Term of the Lease as of December 1, 2003.

The problem with Sabert's argument is that it depends entirely on extrinsic evidence. As already noted, Minnesota law is clear that a court may not consider extrinsic evidence in interpreting a written contract that is both unambiguous and integrated. The Lease and Schedule 001R comprise such a contract. Under the terms of that contract, the parties entered into a straightforward lease of equipment, and Schedule 001R simply extended that lease and added additional equipment. The terms of the Lease, including the Commencement Date of Schedule 001R, are clear on the face of the documents. The fact that the contract represents a bad deal for Sabert does not excuse Sabert from performance: "If a contract is unambiguous, the 'contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh.'" *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003) (quoting *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999)).[4]

---

[4]Sabert points out that the Lease is considered a "finance lease" under the Uniform Commercial Code, *see* Minn. Stat. § 336.2A-103(1)(g), but Sabert does not explain why or how that fact should affect the Court's analysis.

2. The Termination Date

The Court has found that, pursuant to the unambiguous terms of the Lease and Schedule 001R, the Commencement Date of Schedule 001R was December 1, 2003. Pursuant to § 1 of the Lease, therefore, the Initial Term of the Lease ended forty-two months later, on May 31, 2007. That answers the question of when the *Initial Term* ended, but it does not answer the question of when the *Lease* ended, because, as described above, the Lease contains an evergreen clause pursuant to which the Lease automatically renews each year unless one of the parties sends a written termination notice at least 120 days before the termination date. Winthrop argues that, because Sabert did not send a written termination notice until August 2007, the Lease automatically renewed on June 1, 2007 and did not end until May 31, 2008.

Sabert contends that, for two reasons, the Lease did not renew on June 1, 2007:

First, Sabert points to the schedules, both of which include the following statement: "Term of Lease from Commencement Date: 42 Months." Sched. 001; Sched. 001R. This specific language, Sabert argues, controls over any general language in the Lease regarding the length of the Lease term. But Sabert's argument ignores the fact that the language on which Winthrop relies — the evergreen clause — concerns the *renewal* of the Lease term. The fact that the *initial term* of the Lease is forty-two months does not change the fact that the Lease automatically *renews* each year. When read as a whole, the Lease and the schedules are unambiguous on this point: The Lease runs for an Initial Term of forty-two months from the Commencement Date, after which the Lease automatically renews each year until it is terminated by one or both of the parties.



Received July 21 2008 24

Second, Sabert argues that its former counsel, Lawrence Goldman, sent a termination notice to Winthrop on January 8, 2007, which was more than 120 days before May 31, 2007. *See* Defs.' Ex. 41. Thus, Sabert argues, the evergreen clause had no effect and the Lease terminated, at the latest, on May 31, 2007.[5]

No reasonable jury could agree with Sabert that the Goldman letter was a termination notice within the meaning of the Lease. The letter does not purport to terminate anything; to the contrary, the letter discusses the Lease as though it contained a single non-renewable forty-two month term that had already ended.[6] In other words, the letter plainly betrays the fact that Goldman was *unaware* of the evergreen clause and the need for one party or the other to provide a termination notice. The Goldman letter was obviously not intended to terminate a lease that, in Sabert's view, had already become a dead letter.

Moreover, there is not a shred of contemporaneous extrinsic evidence that either Sabert or Winthrop understood Goldman to be providing a termination notice under the Lease. To the contrary, in its response to Goldman's letter, Winthrop expressly informed Sabert that it did not consider Sabert's letter to be a notice of termination: "Lease Schedule Number 001R remains in effect as Winthrop has not received notice of Sabert's intention to terminate it." Pl.'s Ex. 20. Despite receiving this explicit warning in January 2007, Sabert did nothing until August 29,

---

[5]The Court notes that Sabert's argument that the Commencement Date of the Lease was July 1, 2003 puts it in something of a bind. If Sabert is correct that the Commencement Date was July 1, 2003, the Initial Term of the Lease ended on December 31, 2006. Goldman's January 2007 letter would thus have come too late to prevent the renewal of the Lease under the evergreen clause. At the earliest, therefore, the Lease would have ended on December 31, 2007.

[6]"We believe that Sabert's obligations under the Lease terminated with the 'rent' payment made for the month of December 2006. . . . [W]e look forward to receipt of an acknowledgement from you that the Lease term has been concluded." Defs.' Ex. 41 at 1, 3.

2007, when it finally sent a termination notice. Defs.' Ex. 43. Notably, that termination notice is quite different in language and tone, further highlighting the fact that the Goldman letter was not a termination notice.

Sabert thus did not provide an effective termination notice until August 29, 2007, well after the Lease term had automatically renewed pursuant to the evergreen clause. The Court therefore holds that the Lease automatically renewed on June 1, 2007 and did not end until May 31, 2008.

3. Sabert's Affirmative Defenses

Sabert raises a number of affirmative defenses to the Lease, including misrepresentation, mistake, and equitable estoppel. These defenses are all based on two alleged misrepresentations. First, Sabert alleges that the entire Lease is voidable because Winthrop failed to disclose its intent to charge lease payments beyond the forty-two-month term identified in the schedules. According to Sabert, this failure amounts to a misrepresentation of Winthrop's "state of mind." Second, Sabert alleges that Schedule 001R is voidable because Winthrop misrepresented the purpose of Schedule 001R. Specifically, Sabert alleges that Winthrop told Sabert that the "only" purpose of Schedule 001R was to adjust the monthly lease charge, when in fact Schedule 001R also had the effect of re-setting the Commencement Date to December 1, 2003 and thus extending the Initial Term of the Lease through May 2007.

The problem with Sabert's arguments is that they boil down to a complaint that Winthrop failed to disclose what was clearly disclosed on the face of the contract itself. The Court cannot emphasize this point strongly enough: The Lease and the associated schedules are short and to the point. All of the information that Sabert claims was misrepresented appears on the face of

the Lease, and nearly all of it appears on the first page of the Lease — indeed, in the very first paragraph. No one who reads the Lease — certainly no one who, like Sabert's representative, is experienced in reviewing and signing contracts — could fail to understand that the term of the Lease was longer than forty-two months. Similarly, no one who reads Schedule 001R could fail to understand that the Commencement Date for the forty-two month period was December 1, 2003. Sabert is in essence complaining that Winthrop failed to tell it what was plainly disclosed on the face of the contract.

This is sufficient to defeat Sabert's affirmative defenses. But the Court also notes that Sabert's own conduct demonstrates that it must have been aware that the term of the Lease was longer than forty-two months. Sabert paid interim rent for the month of June 2003, which, at a minimum, meant that Sabert understood the term of the Lease to be at least forty-*three* months. Similarly, Sabert's claimed belief that Schedule 001R did not restart the forty-two month period is hard to reconcile with the fact that Sabert was entering into a lease that included additional equipment. Under Sabert's theory, Sabert's repayment obligation for the newly installed equipment would have started with the sixth lease payment. It is hard to understand how Sabert could believe that the lease term on the newly installed equipment was *less* than forty-two months.

In any event, in the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms were different. *Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982). Sabert attempts to avoid this general rule by offering extrinsic evidence of alleged misrepresentations. But the parol-evidence rule bars extrinsic evidence of alleged misrepresentations if the written contract explicitly states terms that

are "completely antithetical to the claimed misrepresentations." *Clements Auto Co. v. Serv. Bureau Corp.*, 444 F.2d 169, 179 (8th Cir. 1971) (citing *Vint v. Nelson*, 127 N.W.2d 177 (Minn. 1964)). If, for example, a written agreement specifies that a lessee will pay rent of $100 per month to the lessor, the lessee cannot introduce extrinsic evidence that the lessor said that the rent would be only $90 per month. A lessee who is promised a rate of $90 per month should not sign a contract obligating it to pay $100 per month.

In this case, both of the alleged misrepresentations — that Winthrop would only charge for forty-two months' rent, and that the only purpose of Schedule 001R was to adjust the monthly charge — are completely contradicted by the plain terms of the written documents. Sabert is charged with knowledge of those terms. Sabert cannot evade the parol-evidence rule by alleging that Winthrop misrepresented terms that are expressly disclosed in the parties' written agreement. A contrary holding would render the parol-evidence rule meaningless.

Sabert's reliance on the defense of unilateral mistake is similarly meritless. Generally, a party cannot avoid a contract on the basis of its own unilateral mistake unless there is ambiguity, fraud, or misrepresentation. *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 102 (Minn. Ct. App. 2004). As explained above, there is no ambiguity, fraud, or misrepresentation in this case. The Lease and Schedule 001R are crystal clear that the Lease term was longer than forty-two months and that the Commencement Date for the forty-two month period was December 1, 2003. The parol-evidence rule bars any extrinsic evidence of representations to the contrary.

It is true that a court may rescind a contract on the basis of one party's unilateral mistake — even in the absence of fraud or misrepresentation — when enforcement would impose an

"oppressive burden" and rescission would not prejudice the other party. *Gethsemane Lutheran Church v. Zacho*, 104 N.W.2d 645, 649 (Minn. 1960); *cf. TNT Props., Ltd.*, 677 N.W.2d at 102 (recognizing that unilateral mistake may be the basis for rescission where the contract may be rescinded without prejudice to the other party). But Sabert does not argue that the Lease could be rescinded without prejudice to Winthrop. Even if the Lease could be rescinded without prejudice to Winthrop — which seems doubtful, as computer equipment is a fast-depreciating asset — it appears that Minnesota courts would still not permit rescission in these circumstances:

> [I]t is equally clear that in the interest of preserving some reasonable stability in commercial transactions the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract.

*Gethsemane Lutheran Church*, 104 N.W.2d at 649; *see also Gartner*, 319 N.W.2d at 398 (in the absence of fraud or misrepresentation, mistake as to contents of contract is no basis to avoid the contract). Sabert is thus not entitled to rescission on the basis of unilateral mistake.

Finally, Sabert argues that Winthrop should be equitably estopped from asserting that Sabert breached the Lease. This defense largely overlaps with Sabert's defenses of misrepresentation and mistake, and fails for the same reasons. In particular, to prevail on the defense of equitable estoppel, a party must demonstrate "'acts, language or silence amounting to a representation or a concealment of material facts.'" *Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 777 (Minn. 2004) (quoting *Lunning v. Land O'Lakes*, 303 N.W.2d 452, 457 (Minn. 1980)). Again, Sabert's contentions boil down to a complaint that Winthrop did not tell it what was plain on the face of the contract it signed. Sabert's equitable-estoppel defense therefore

fails, and Winthrop is entitled to summary judgment in its favor on its claim for breach of the Lease.[7]

*C. Sabert's Counterclaims*

Winthrop also moves for summary judgment on Sabert's three counterclaims.

Under its first counterclaim, for unjust enrichment, Sabert argues that if the Commencement Date of the Lease was December 1, 2003, then Winthrop has been unjustly enriched by the amount of rent that Sabert paid from July through November 2003. But the parties have an express contractual agreement under which Winthrop was entitled to lease payments from July through November 2003, and thus Sabert's unjust-enrichment claim to recover those payments is without merit. *See U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (equitable relief cannot be granted where the rights of the parties are governed by a valid contract). There is nothing "unjust" about Winthrop receiving payments that Sabert promised to make pursuant to the terms of a clear and valid contract.

Sabert's remaining counterclaims — for breach of contract and unjust enrichment — relate to the $25,576 security deposit that Sabert gave to Winthrop pursuant to Schedule 001R. Sabert contends that Winthrop breached the Lease (and was unjustly enriched) because Winthrop has not applied that amount toward the final lease payment.

---

[7]Sabert also argues that Winthrop should be estopped from arguing that the Lease term automatically renewed at the end of May 2007 because in December 2006 a Winthrop representative told Sabert that the "lease does not expire til May." Defs.' Mem. Opp. Summ. J. 46. That statement was not a misrepresentation, however; the Initial Term of the Lease did expire at the end of May 2007. Pursuant to the evergreen clause, however, the Lease automatically renewed on June 1, 2007. Sabert's failure to understand the terms of an unambiguous contract is not a sound basis for applying the doctrine of equitable estoppel.

Schedule 001R states that "*[i]f* there is no event of default, this security deposit will be applied toward the total Lease Charges associated with the last month of this Lease Schedule." Sched. 001R (emphasis added). But, as the Court has found, Sabert's failure to make any lease payments after December 2006 is an event of default. Lease § 16(1). Winthrop is therefore under no obligation to apply Sabert's security deposit to Sabert's last rental payment under the Lease.

Winthrop's motion for summary judgment is granted with respect to all of Sabert's counterclaims.

*D. Winthrop's Recovery*

The Court has found that there is no genuine issue as to any material fact and that the term of the Lease continued until May 31, 2008. Sabert's failure to pay any lease charges since December 2006 is an event of default entitling Winthrop to recover past-due rent, late charges, and accelerated rent, as well as attorney's fees, costs, and expenses incurred in connection with this case. Lease §§ 16-18. Winthrop asserts that as of the date of its motion it was entitled to past-due rent of $255,760.00,[8] late charges of $36,862.10, and accelerated rent of $175,505.37, for a total of $468,127.47. Sabert does not dispute these calculations, and the Court will therefore order judgment for Winthrop in that amount.

Finally, pursuant to § 17 of the Lease, Winthrop is entitled to the return of its computer equipment. Sabert argues that Winthrop has not provided written instructions regarding where

[8]Winthrop's memorandum erroneously states that it is entitled to past due rent of $355,760.00. *See* Pl.'s Mem. Supp. Summ. J. 15. It is obvious, from Winthrop's calculations and the invoices that Winthrop submitted, that the first digit of the past-due figure in Winthrop's memorandum should be a "2" instead of a "3."

Sabert should return the equipment, as required by § 7 of the Lease, and that therefore Sabert has not defaulted on its obligation to return the equipment. Sabert's argument misses the point; it is Sabert's default on its *payment obligations* that entitles Winthrop to the return of the equipment under § 17, and § 17 permits Winthrop to choose among various methods of repossessing its equipment, including (but not limited to) the procedure described in § 7. The Court will therefore declare that Winthrop is entitled to the return of its equipment, which will permit Winthrop to proceed to repossess that equipment under § 17.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [Docket No. 19] is GRANTED.
2. Plaintiff shall recover $468,127.47 from defendants.
3. Plaintiff is entitled to the return of the equipment leased to defendants pursuant to Lease Agreement No. SA041003.
4. Plaintiff is entitled to recover its attorney's fees, costs, and expenses incurred as a result of defendants' breach of Lease Agreement No. SA041003.
5. Within ten days of the date of this order, plaintiff shall file and serve a detailed affidavit and supporting documentation for its attorney's fees, costs, and expenses. Defendants may file and serve a response of no more than 4000 words within ten days after the date plaintiff files and serves its affidavit.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 20, 2008

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

AO450 (Rev. 5/85) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## District of Minnesota

Winthrop Resources Corporation

V.

Sabert Corporation and
Sabert Holding Corporation

## JUDGMENT IN A CIVIL CASE

Case Number: 07cv1735 PJS/RLE

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

1. Plaintiff's motion for summary judgment [Docket No. 19] is GRANTED.

2. Plaintiff shall recover $468,127.47 from defendants.

3. Plaintiff is entitled to the return of the equipment leased to defendants pursuant to Lease Agreement No. SA041003.

4. Plaintiff is entitled to recover its attorney's fees, costs, and expenses incurred as a result of defendants' breach of Lease Agreement No. SA041003.

5. Within ten days of the date of this order, plaintiff shall file and serve a detailed affidavit and supporting documentation for its attorney's fees, costs, and expenses. Defendants may file and serve a response of no more than 4000 words within ten days after the date plaintiff files and serves its affidavit.

June 23, 2008
Date

RICHARD D. SLETTEN, CLERK

s/V. Moralez
(By) V. Moralez, Deputy Clerk

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-244-2499.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found on the forms page of the Court of Appeals' website at: http://www.ca8.uscourts.gov and the District Court's website at: http://www.mnd.uscourts.gov.

*October 27, 2004*

H:\XFR\forms\civil\Appeals\8thcircuitprehearingconf.wpd Form Modified 10/27/04

# UNITED STATES DISTRICT COURT
## District of Minnesota

Richard D. Sletten, Clerk
Wendy S. Osterberg, Chief Deputy Clerk

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 Federal Building
515 West. First Street
Duluth, MN 55802
(218) 529-3500

212 U.S. Courthouse
118 South Mill Street
Fergus Falls, MN 56537
(218) 739-5758

## CIVIL NOTICE

**The appeal filing fee is $455.00. If you are indigent, you can apply for leave to proceed in forma pauperis, ("IFP").**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Winthrop Resources Corporation,<br><br>Plaintiff,<br>v.<br><br>Sabert Corporation and Sabert Holding Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Case No. 07-CV-1735 (PJS/RLE)**<br><br><br><br>**NOTICE OF APPEAL** |

Notice is hereby given that Sabert Corporation and Sabert Holding Corporation ("Sabert"), Defendants in the above-named case, hereby appeal to the United States Court of Appeals for the Eighth Circuit from the judgment entered by the District Court in this action on June 23, 2008, based upon the Order entered on June 20, 2008, granting plaintiff's motion for summary judgment.

Dated: July 18, 2008

FREDRIKSON & BYRON, P.A.

By: s/ Matthew T. Boos

Matthew T. Boos (# 237310)
James L. Baillie (# 3980)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 492-7180
Facsimile: (612) 492-7077
jbaillie@fredlaw.com
mboos@fredlaw.com

Attorneys for Defendants

4402006_1.DOC

# U.S. COURT OF APPEALS – EIGHTH CIRCUIT
## APPELLANT'S FORM A
## Appeal Information Form
To be filed with the Notice of Appeal

Appeal Docket No.

______________

| STYLE OF CASE: | COUNSEL: NAME, ADDRESS, AND TELEPHONE NUMBER |
|---|---|
| Sabert Corporation and Sabert Holding Corporation,<br><br>Appellant,<br><br>vs. | Matthew T. Boos<br>James L. Baillie<br>Fredrikson & Byron, P.A.<br>200 South Sixth Street, Ste. 4000<br>Minneapolis, MN 55402<br>(612) 492-7180 |
| | COUNSEL: NAME, ADDRESS, AND TELEPHONE NUMBER |
| Winthrop Resources Corporation,<br><br>Appellee, | Edward T. Wahl<br>Michael M. Krauss<br>Nathaniel J. Zylstra<br>S. Renee Dotson<br>Faegre & Benson, L.L.P.<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis MN 55402-3901 |

LIST ISSUES ON APPEAL (For administrative purposes). You may indicate that this also serves as your statement of issues under FRAP 10(b)(3). __________Yes. ___X______No.

Whether the district court erred in granting Plaintiff's motion for summary judgment.

FOR LEAD COUNSEL ONLY
I ___X__ have (______ have not) discussed settlement possibilities on appeal with my client.
This appeal __X___ is (______ is not) amenable to settlement.

Submitted by: s/ Matthew T. Boos ______________________________ 7/18/2008
Signature of Lead Counsel Date

INSTRUCTIONS:
Filing of appellant's Form A is required to be submitted to the Clerk of the District Court with the Notice of Appeal (8 Cir. Rule 3B). If inadvertently omitted, appellant may file Form A directly with the Clerk of the Court of Appeals before appeal is docketed. Forms are available at the District Court Clerk's Office and may be obtained electronically at: www.ca8.uscourts.gov

Copy 1 – Send to Appellee (together with an uncompleted Form B)
Copy 2 & 3 – Send to Clerk, District Court with Notice of Appeal or Eighth Circuit (see above)
Copy 4 - Retain

#4402064/1

U.S. COURT OF APPEALS - EIGHTH CIRCUIT

Appeal Docket No.

_______________

# APPELLEE'S FORM B

## Appeal Information Form

CASE NAME (Underline name of Appellee):

IS THIS ALIGNMENT OF PARTIES, NAMES, ADDRESSES, AND TELEPHONE NUMBERS CORRECT ON APPELLANT'S FORM A? ☐ Yes ☐ No If no, list corrections below.

FOR LEAD COUNSEL ONLY

I ☐ have (☐ have not) discussed settlement possibilites on appeal with my client.

This appeal ☐ is (☐ is not) amenable to settlement.

NAME, ADDRESS, AND TELEPHONE NUMBER OF LEAD COUNSEL:

Submitted by: s/ ________________________________

Date: ________________________________

Copy 1 - Send to Appellant

Copy 2 & 3 - Send to Clerk, Eighth Circuit Court of Appeals

Copy 4 - Retain

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Winthrop Resources Corporation,<br><br>Plaintiff,<br>v.<br><br>Sabert Corporation and Sabert Holding Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Case No. 07-CV-1735 (PJS/RLE)**<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on July 18, 2008, I caused the following documents:

1. Notice of Appeal;
2. Appeal Information Form (Form A); and
3. Appeal Information Form (Form B) (Blank).

to be filed electronically with the Clerk of the Court through ECF and that ECF will send an e-notice of electronic filing to the following:

Edward T. Wahl, Esquire
ewahl@faegre.com

Michael M. Krauss, Esquire
mkrauss@faegre.com

Nathaniel J. Zylstra
nzylstra@faegre.com

S. Renee Dotson
srdotson@faegre.com

Dated: July 18, 2008

*s/ Matthew T. Boos*
Matthew T. Boos (#237310)
James L. Baillie (#3980)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Telephone: (612) 492-7180
Facsimile: (612) 492-7077
mboos@fredlaw.com
jbaillie@fredlaw.com

**ATTORNEY FOR DEFENDANTS**

4402140_1.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WINTHROP RESOURCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SABERT CORPORATION and SABERT HOLDING CORPORATION,<br><br>Defendants. | Case No. 07-CV-1735 (PJS/RLE)<br><br>ORDER GRANTING ATTORNEY'S FEES, COSTS, AND EXPENSES |

Edward T. Wahl, Michael M. Krauss, and Nathaniel J. Zylstra, FAEGRE & BENSON, L.L.P., for plaintiff.

James L. Baillie and Matthew T. Boos, FREDRIKSON & BYRON, P.A., for defendants.

On June 20, 2008, the Court granted the motion of plaintiff Winthrop Resources Corporation ("Winthrop") for summary judgment and, on June 23, 2008, entered judgment in Winthrop's favor in the amount of $468,127.47 against defendants Sabert Corporation and Sabert Holding Corporation (collectively "Sabert"). Docket Nos. 65, 66. The Court also ordered Winthrop to submit a detailed affidavit, with supporting documentation, setting forth its claimed attorney's fees, costs, and expenses, and granted Sabert permission to file a response no later than ten days after Winthrop submitted the affidavit. Winthrop served and filed its affidavit on June 30, 2008, and thus Sabert's response, if any, was due no later than July 15, 2008. *See* Fed. R. Civ. P. 6(a)(2). Sabert has not filed a response.

As noted in the order granting Winthrop's motion for summary judgment, the parties' lease requires Sabert to pay attorney's fees, costs, and expenses to Winthrop in the event of any legal claim or proceeding arising out of the lease. *See* Pl.'s Ex. 4 at § 18 [Docket No. 22]. Specifically, the lease permits Winthrop to recover "all costs, expenses and fees paid or payable

in connection with the Claim, including, but not limited to, attorneys' fees and out-of-pocket costs, including travel and related expenses incurred by [Winthrop] or its attorneys." *Id.*

Winthrop seeks fees, costs, and expenses in the amount of $116,861.58. The Court agrees with Winthrop that, because it is recovering fees, costs, and expenses under the extremely broad language of the lease rather than as a prevailing party under 28 U.S.C. § 1920, Winthrop is entitled to recover amounts that are not otherwise recoverable under § 1920. The Court also notes that the parties' lease does not expressly require that the fees, costs, and expenses be reasonable. Nevertheless, having reviewed the affidavit and accompanying documentation, the Court is satisfied that the requested amount is reasonable and will order Sabert to pay that amount.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff shall recover its attorney's fees, costs, and expenses in the amount of $116,861.58 from defendants.

Dated: July 21, 2008

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

Richard D. Sletten, Clerk
Wendy S. Osterberg, Chief Deputy Clerk

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 Federal Building
515 West First Street
Duluth, MN 55802
(218) 529-3500

212 U.S. Courthouse
118 South Mill Street
Fergus Falls, MN 56537
(218) 739-5758

## TRANSMITTAL OF APPEAL

**Date:** July 21, 2008
**To:** U.S. COURT OF APPEALS, 8TH CIRCUIT
**From:** V. Moralez, Deputy Clerk

**In Re:** District Court Case No.: 07cv1735 PJS/RLE
Eighth Circuit Case No.:
Case Title: Winthrop Resources Corp v Sabert Corp

---

The statutory filing fee has:

____ been paid, receipt # .
_x_ not been paid as of 7/21/08. IFP ____ is ____ is not pending.
____ been waived because:
____ Application for IFP Granted ____ USA filed appeal

Length of Trial: days

Was a court reporter utilized? _x_ Yes ____ No

If yes, please identify the court reporter:
Name: Debra Beauvais
Address: 316 N. Robert St
St. Paul, MN 55101
Phone: 651-848-1223

____ Forms A & B were not received; please see attached forms.

____ Forms A & B were given to counsel at the counter.

_x_ Completed Form A enclosed in transmittal letter.

____ Original file(s), consisting of ________ file(s) and ____ expandable(s)

_x_ Transcript(s):

| | Volume | Date | Proceeding |
|---|---|---|---|
| Docket #63 | 1 | 12/3/07 | Plaintiff's motion for summary judgment |